1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4              v.                        13 Cr. 443 (DCF)

5  WILLIE LEE STANLEY,
                                         Plea
6              Defendant.

7  ------------------------------x

8                                        New York, N.Y.
                                         July 18, 2014
9                                        11:15 a.m.

10

   Before:
11
             HON. DEBRA C. FREEMAN
12
                                         Magistrate Judge
13

14
             APPEARANCES
15

16 PREET BHARARA
        United States Attorney for the
17      Southern District of New York
   MICAH WJ SMITH
18      Assistant United States Attorney

19

   FEDERAL DEFENDERS OF NEW YORK, INC.
20      Attorneys for Defendant
   BY:  MARTIN S. COHEN
21

22 JEFFREY STEIMEL
        Probation Officer
23

24

25

1          (Case called)

2          THE CLERK:  Counsel, state your names for the record.

3          MR. SMITH:  Good morning, your Honor.  Micah Smith for

4   the government.  With me at counsel table is Pretrial Services

5   Officer Jeff Steimel.

6          MR. COHEN:  Good morning, your Honor.  Martin Cohen

7   from the Federal Defenders on behalf of Mr. Stanley.

8          THE COURT:  Good morning.  I gather we are here for a

9   plea.

10         MR. COHEN:  That's correct, your Honor.

11         THE COURT:  Mr. Cohen, is there anything you want to

12  say before we start?

13         MR. COHEN:  Yes, your Honor.  Mr. Stanley is here to

14  withdraw his previously entered plea of not guilty to the

15  one-count information and enter a plea of guilty at this time.

16         Before we begin with the Court's colloquy in terms of

17  his understanding of what is going on, I wanted to let the

18  Court know that Mr. Stanley takes a variety of medications to

19  address primarily a seizure disorder as well as some mental

20  health issues.  The side effects of those medications include

21  some lethargy and tiredness.

22         I wanted the Court to know that if Mr. Stanley appears

23  tired or if he yawns or appears lethargic, it does not reflect

24  either that he is not paying attention or he is not taking this

25  seriously or his inability to understand what is going on.

1   Those are side effects of the medication that have the effect

2   of helping Mr. Stanley to understand what's going on and to

3   participate in these proceedings.

4          As we get to that point in the Court's colloquy, I

5   will represent to the Court, or I'll do it now, that I have

6   spent time with Mr. Stanley this morning.  I am fully confident

7   of his ability to understand these proceedings and what is

8   going on, and the gravity of it.  Thank you.

9          THE COURT:  Mr. Stanley, you have been charged with a

10  crime in an information.  You have a right to a trial on that

11  charge before a United States district judge or a magistrate

12  judge.  I have in front of me a consent form that was filled

13  out it looks like June 14th.  Actually, I'm not quite clear on

14  that.  It looks like 6 dash 14 dash 17.  This obviously would

15  not be 2017.  Maybe it was the 17th of June 2014.  Maybe you

16  could shed some light on when this was filled out.  Middle of

17  June sometime?

18          MR. COHEN:  Your Honor, I think it was significantly

19  earlier than that when we first appeared before the Court.

20          THE COURT:  Let me hand down what I have.

21          MR. COHEN:  I think it might have been June of 2013.

22          THE COURT:  Oh, June 2013.  That is a 13, not a 17.

23          MR. COHEN:  Yes, your Honor.

24          THE COURT:  So, it was more than a year ago that this

25  consent form was filled out?

1          MR. COHEN:  Yes, your Honor.

2          THE COURT:  Let me hand it back down for a moment so

3  Mr. Stanley can see it for a moment, since it was not filled

4  out today or even recently, before I ask him about it.

5          MR. COHEN:  Thank you, your Honor.

6          THE COURT:  Could you hand it back to me after he has

7  had a chance to look at it.

8          Mr. Stanley, is that your signature on the form I just

9  handed down?

10          THE DEFENDANT:  Yes.

11          THE COURT:  It's a consent to proceed before a

12  magistrate judge in a misdemeanor case.  I want to inform you

13  that you do have the right, as stated on the form, to a lawyer,

14  you have a right to a jury trial, and you have the right to be

15  tried, judged, and sentenced before either a United States

16  district judge or a United States magistrate judge.

17          The first thing I want to confirm with you is that you

18  do consent to proceeding before a magistrate judge for the

19  purpose of entering a plea and, if necessary, for purposes of

20  trial, and that to the extent you have a right to a trial,

21  judgment, or sentencing before a district judge, you are

22  prepared to waive that.  Is that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that with your consent a

25  United States magistrate judge, such as myself, has the

1  authority to take a plea from you?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that if you are

4  proceeding before a magistrate judge for the purpose of

5  entering a plea, you would receive all of the same procedural

6  protections as you would receive, do receive, before a district

7  judge?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is this your signature on the form?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Before you signed this form, did your

12  lawyer explain it to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have any threats or promises of any kind

15  been made to cause you to agree to proceed before a magistrate

16  judge today?

17          THE DEFENDANT:  No.

18          THE COURT:  Before I proceed to take your plea, I must

19  ask you some questions for which I need to place you under

20  oath.  Would you please raise your right hand.

21          (Defendant sworn)

22          THE COURT:  Please state your full name for the

23  record.

24          THE DEFENDANT:  Willie Stanley, Jr. IV.

25          THE COURT:  Willie Stanley Jr.?

1          THE DEFENDANT:  IV.

2          MR. COHEN:  The fourth, your Honor.

3          THE COURT:  The fourth.  Are you a United States

4  citizen?

5          THE DEFENDANT:  Yes.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  24.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Twelfth grade.

10          THE COURT:  I understand you have been under the care

11  of a doctor recently.  Is that correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Can you tell me in general terms the

14  reason why you have been under the care of a doctor.

15          THE DEFENDANT:  My mental health disability and also

16  my epilepsy grand mal seizures.

17          THE COURT:  I understand you take medication, is that

18  correct?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Is there anything about your underlying

21  conditions that would affect your ability to participate fully

22  in these proceedings today?

23          THE DEFENDANT:  No.

24          THE COURT:  Is there anything about the medication you

25  are taking that would affect your ability to participate fully

1    in these proceedings today?

2           THE DEFENDANT:  No.

3           THE COURT:  Do you have any condition that affects

4    your ability to see or to hear?

5           THE DEFENDANT:  No.

6           THE COURT:  Do you have any mental health or other

7    condition that affects your ability to think or to reason or to

8    understand or make decisions or judgments on your own behalf?

9           THE DEFENDANT:  No.

10          THE COURT:  Can you tell me what kind of mental health

11   conditions you have.

12          MR. SMITH:  Bipolar, cognitively impaired, ADHD,

13   schizophrenia.

14          THE COURT:  That's a number of conditions.  Are all

15   these conditions, to your belief, under control with

16   medication?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you ever been treated for drug

19   addiction or alcoholism?

20          THE DEFENDANT:  No.

21          THE COURT:  As you appear before me today, are you

22   under the influence of any kind of drugs or alcohol or

23   medication?

24          THE DEFENDANT:  Only my psych medication and my

25   seizure medication.

1              THE COURT:  There is a difference between taking

2     medication and being under the influence of medication.  If you

3     are under the influence of some kind of medication, you may not

4     be thinking clearly for yourself; the drugs may be influencing

5     how you think.

6              THE DEFENDANT:  The drugs is not influencing.  If

7     anything, they are making me better, calming down my behavior,

8     making me clear, making me think clearly.

9              THE COURT:  Do you generally feel all right today?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you have any trouble understanding the

12    questions I'm asking you?

13             THE DEFENDANT:  No.

14             THE COURT:  Have you received a copy of the

15    information in this case?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you had a chance to read it or do you

18    want me to take the time to read it to you?

19             THE DEFENDANT:  I had a chance to read it.

20             THE COURT:  Do you understand what it says you did?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you had enough time to talk to your

23    attorney about the charge and about how you wish to plead?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Are you satisfied with the representation

```
 1              and advice given to you by your attorney?

 2                          THE DEFENDANT:  Yes.

 3                          THE COURT:  Are you ready to enter a plea today?

 4                          THE DEFENDANT:  Yes.

 5                          THE COURT:  Bearing in mind that the information

 6              charges that you violated Title 18 of the United States Code,

 7              section 111(a), which makes it a crime to commit what is

 8              referred to as simple assault, particularly to assault a person

 9              who is engaged in and on account of the performance of that

10              person's official duties, and more specifically, as charged,

11              that you assaulted a claims representative of the Social

12              Security Administration at that person's office in the Bronx,

13              how do you wish to plead to this charge, guilty or not guilty?

14                          THE DEFENDANT:  Guilty.

15                          THE COURT:  Because you are proposing to enter a

16              guilty plea, I have to ask you some additional questions to be

17              sure that you understand the nature of that charge and the

18              consequences of your plea, and also to ensure that your plea is

19              voluntary.

20                          First, I want you to understand that if convicted of

21              that charge, you could face a maximum term of imprisonment of

22              one year, a maximum term of supervised release of one year, a

23              maximum fine of $100,000, and a mandatory special assessment of

24              $25.  Do you understand all of that?

25                          THE DEFENDANT:  Yes.
```

1           THE COURT:  Do you also understand that if as part of

2     your sentence you are placed on a term of supervised release

3     and you then violate any condition of that release, your

4     supervised release may be revoked and you may face an

5     additional term of imprisonment?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you understand that if that should

8     happen, you may not get credit for the time you served on

9     supervised release?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that this means that if

12    you violate any condition of your supervised release, the Court

13    could order you to serve in prison all or part of the term of

14    supervised release that's authorized by law for this offense

15    without giving you credit for time you may have already served

16    on supervised release?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that you have a right to

19    plead not guilty to this charge and the right to a speedy and

20    public trial, and a jury trial if you wish?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if you were to go

23    to trial, the burden would be on the government to prove your

24    guilt by competent evidence beyond a reasonable doubt?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that if you were to go

2     to trial, you would be presumed to be innocent unless and until

3     the government did prove your guilt beyond a reasonable doubt?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that if you were to go

6     to trial by jury, a jury composed of 12 people selected from

7     this district would have to agree unanimously that you are

8     guilty?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you understand that at a trial you

11    would be entitled to be represented by an attorney at all

12    stages, and if you could not afford to hire one, an attorney

13    would be provided to you free of charge?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that your right to be

16    represented by counsel and, if necessary, to have the Court

17    appoint counsel for you applies not only to trial but also to

18    every other stage of the proceedings against you?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that at trial you would

21    be entitled, through your attorney, to cross-examine any

22    witness called by the government to testify against you?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that at a trial you

25    would also be entitled to testify and to present evidence on

 1    your own behalf?

 2                THE DEFENDANT:  Yes.

 3                THE COURT:  Do you understand that this means that you

 4    could call witnesses to testify on your behalf?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  Do you also understand that you would be

 7    entitled to have the Court issue subpoenas to compel witnesses

 8    to appear to testify on your behalf?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  Do you understand that at a trial you

11    would not be required to incriminate yourself?  In other words,

12    you would not be required to testify against yourself?

13                THE DEFENDANT:  Yes.

14                THE COURT:  Do you understand that this means that at

15    a trial you would have the right to testify if you wanted to do

16    so, but no one could force you to testify if you did not want

17    to do so, and, furthermore, no inference or suggestion of guilt

18    could be drawn if you chose not to testify at trial?

19                THE DEFENDANT:  Yes.

20                THE COURT:  Do you understand that if you go forward

21    now with your guilty plea, you will be giving up all of these

22    types of protections that I have just described, including your

23    very right to a trial, and the only remaining step will be the

24    imposition of sentence?

25                THE DEFENDANT:  Yes.

1              THE COURT:  Do you understand that if any of the

2     answers that you give me today prove to be untruthful, you

3     could face a separate prosecution for perjury or for making a

4     false statement to the Court?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Let me ask if you still wish to plead

7     guilty in light of everything I just told you?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you understand that the Court will have

10    discretion as to the appropriate sentence in your case?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that that discretion

13    will be limited only by what the law requires for this

14    particular offense?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that in determining your

17    sentence, the Court will have to consider the so-called

18    sentencing guidelines even though it will not be required to

19    sentence you within the guidelines range?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Have you and your attorney had a chance to

22    talk about how the guidelines may be calculated in your case?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that the Court will not

25    be able to determine the guidelines for your case until after a

1   pre-sentence report has been completed and both you and the

2   government have had a chance to challenge the facts that are

3   reported there by the probation officer?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that even after the

6   guidelines calculation has been made for a case, the Court will

7   have the authority to impose a sentence that is either less

8   severe or more severe than the sentence recommended by the

9   guidelines as long as it is within the statutory maximum for

10  the crime?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that in addition to

13  considering the sentencing guidelines, the Court will also have

14  to consider what is called possible departures from the

15  guidelines and also a number of different factors on deciding

16  on the appropriate sentence to impose in your case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you and your attorney had a chance to

19  talk about the various factors that are listed in the relevant

20  section of law that is Title 18 of the U.S. Code section

21  3553(a) and about how those different factors may apply to you

22  in your particular case?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that those factors

25  include but are not limited to the actual conduct in which you

1     engaged, the victim of the offense, the role you played in the

2     offense, whether or not you had accepted responsibility for

3     your acts, whether you have any criminal history, and whether

4     you have engaged in any obstruction of justice?

5               THE DEFENDANT:  Yes.

6               THE COURT:  Do you understand that even if you end up

7     shocked and disappointed by your sentence, you will still be

8     bound by your guilty plea?

9               THE DEFENDANT:  Yes.

10              THE COURT:  Do you understand that under some circum-

11    stances you or the government may have the right to appeal the

12    sentence that is imposed?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Do you understand that there is no parole

15    in the federal system and that if you are sentenced to prison,

16    you will not be released on parole?

17              THE DEFENDANT:  Yes.

18              THE COURT:  I have a copy of a letter from the

19    government to your counsel dated July 16, 2014, from the office

20    of the United States Attorney to your attorney.  Have you seen

21    the government's letter?

22              MR. COHEN:  Your Honor, I have reviewed the Pimentel

23    letter with Mr. Stanley and gone over the substance of that

24    letter.

25              THE COURT:  Mr. Stanley, do you recall having those

1    conversations with counsel?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you understand that the government's

4    letter is not a plea agreement?

5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  Do you understand that the purpose of the

7    government's letter is just to give you the government's

8    current understanding as to how the sentencing guidelines would

9    be calculated in your case or should be calculated?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand that nothing in the

12   government's letter can in any way bind the Court with respect

13   to your sentence?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Do you understand that nothing in the

16   government's letter limits its right to change its position at

17   any time as to the guidelines calculation in the case or to

18   give the Court any information in its possession and any

19   arguments that it believes are relevant to sentencing?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Do you understand that nothing in the

22   government's letter limits the right of the government to seek

23   a departure under the guidelines or at variance from the

24   guidelines sentence or to take any position on any departure or

25   variance that the Court or the probation office or you may

1    suggest?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that your sentence will

4    be decided entirely by the Court?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that the government

7    cannot make you any promise or any representation as to what

8    sentence you will receive?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that based on the

11   government's letter, its current view of the guidelines range

12   in your case is that your sentence under the guidelines should

13   be between 15 and 21 months' imprisonment, except this crime

14   carries a statutory maximum of 12 months, so therefore in its

15   view the guidelines range would be 12 months?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you also understand that in the

18   government's view the appropriate range for a fine in this case

19   would be somewhere between 1,000 and $10,000?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that the Court will do

22   its own guideline analysis which may or may not be the same as

23   what the government sets forth in its letter?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Have any promises at any time been made to

1    you to influence you to plead guilty?

2                THE DEFENDANT:  Yes.

3                THE COURT:  I didn't hear what you said.  Let me ask

4    it again.  Have any promises of any kind been made to you to

5    influence you to plead guilty?

6                THE DEFENDANT:  No.

7                THE COURT:  Have any promises been made to you

8    regarding the actual sentence you will receive?

9                THE DEFENDANT:  No promises.

10               THE COURT:  Do you understand that no one, including

11   your attorney or the government or this Court at this time, can

12   give you any assurance as to what your sentence will be, as the

13   Court will determine your sentence after it has seen the

14   pre-sentence report and ruled on any challenges to that report

15   and determined whether there are any grounds to adjust the

16   guidelines range or to sentence you outside of that range?

17               THE DEFENDANT:  No.

18               THE COURT:  I think maybe that question was too long.

19   Let me try that one in shorter segments.

20               Do you understand that no one, including your attorney

21   or the government, can give you any assurance as to what your

22   sentence will be?

23               THE DEFENDANT:  Oh, yes, I understand that.

24               THE COURT:  Do you understand that even the Court

25   could not tell you today what your sentence will be, because

1    the Court will have to go through the process of looking at the

2    pre-sentence report and hearing from both parties before it

3    decides on the sentence?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Have any threats been made against you,

6    either directly or indirectly, to influence how you plead

7    today?

8             THE DEFENDANT:  No.

9             THE COURT:  Is your plea voluntary and made of your

10   own free will?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Before I ask you what you did, let me ask

13   the government to please summarize the elements of the charge

14   that it would need to establish at trial to sustain the charge.

15            MR. SMITH:  Yes, your Honor.  There are four elements.

16   The first is that the target of the simple assault would need

17   to be a federal officer.  The second is that the defendant

18   would have to have impeded, intimidated, or interfered with

19   that federal officer.  The third is that at the time that the

20   federal officer was engaged in the performance of her official

21   duties, she was assaulted on account of those duties.  The

22   fourth is that the defendant acted willfully, which in this

23   context means intentionally and knowingly and not by mistake or

24   accident.

25            THE COURT:  Mr. Stanley, did you just now hear the

1    attorney for the government summarize the different elements of

2    this crime that it would have to prove at trial in order to

3    obtain a conviction?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Yes?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you understand that the government

8    would have to prove each of those elements of the crime beyond

9    a reasonable doubt in order to obtain a conviction against you?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you still wish to proceed with your

12   guilty plea?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Did you in fact commit this offense?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Can you please tell us in your own words

17   what you did that makes you guilty of this crime that is

18   charged in the information.

19           MR. COHEN:  Your Honor, with the Court's permission,

20   to facilitate Mr. Stanley's allocution, I would like to ask Mr.

21   Stanley a series of questions.  Obviously, if the Court has

22   additional questions.

23           THE COURT:  I'll permit it.

24           MR. COHEN:  Thank you, your Honor.

25           Mr. Stanley, on about March 2, 2013, did you forcibly

1    interfere with a claims representative at a Social Security

2    office in the Bronx while she was engaged in the performance of

3    her official duties?

4                THE DEFENDANT:  Yes.

5                MR. COHEN:  On that day were you waiting for most of

6    the day at the Social Security office to meet with a

7    representative concerning your disability benefits?

8                THE DEFENDANT:  Yes.

9                MR. COHEN:  When you eventually did meet with the

10   representative, did she tell you that she would not be able to

11   complete the meeting and that you needed to return the next

12   day?

13               THE DEFENDANT:  Yes.

14               MR. COHEN:  Did you become upset?

15               THE DEFENDANT:  Yes.

16               MR. COHEN:  Did you curse and insult her?

17               THE DEFENDANT:  Yes.

18               MR. COHEN:  After you left the office, did you see the

19   representative again outside?

20               THE DEFENDANT:  Yes.

21               MR. COHEN:  Did you continue to curse and insult her?

22               THE DEFENDANT:  Yes.

23               MR. COHEN:  By doing so, did you forcibly interfere

24   with the claims representative while she was doing her job?

25               THE DEFENDANT:  Yes.

1          MR. COHEN:  Did you know that what you were doing was

2     wrong?

3          THE DEFENDANT:  Yes.

4          MR. COHEN:  Are you sorry?

5          THE DEFENDANT:  Yes, I'm sorry.

6          THE COURT:  It may be easier, Mr. Stanley, to proceed

7     in the way that counsel just did.

8          But given the leading nature of the questions, I would

9     like to hear a little bit from Mr. Stanley in his own words.

10    To the extent you can, Mr. Stanley, tell me what happened.

11    When you say that you forcibly interfered with the claims

12    representative, what exactly did you do?  Was it just that you

13    were cursing and insulting this person?

14         THE DEFENDANT:  Yes.  I cursed.  At the time I wasn't

15    taking any medication.  I was going there to apply.

16         THE COURT:  You went to apply for benefits?

17         THE DEFENDANT:  Yes, Social Security, SSI benefits.

18    She had got mouthy with me.

19         THE COURT:  I'm sorry.  She what with you?

20         THE DEFENDANT:  He had got mouthy with me, an

21    attitude.

22         THE COURT:  She got mouthy with you?

23         THE DEFENDANT:  Yes.  But she was like disrespecting

24    me, with an attitude.  I cursed her out.  I yelled at her.  Her

25    boss told her to still serve me, and she said, I'm not serving

1    him, he's disrespectful.  They asked me to leave.  I left.  I

2    wasn't forced out, I left.  I waited for her downstairs to

3    argue with her some more.  I'm like, why did you not see me.

4              THE COURT:  You followed her?

5              THE DEFENDANT:  No.  I was in front of the Social

6    Security office.  Her husband came with a car and stopped in

7    front of the Social Security office to pick her up.  This is at

8    the end when they was closing.  So everybody left.  I was the

9    only person there that wasn't an employee there.

10             THE COURT:  She came out of the building, you saw her

11   there?

12             THE DEFENDANT:  Yes.  Everybody was leaving.  All the

13   employees was leaving.  This was towards the end when they was

14   closing down the Social Security office.  I was there arguing

15   with my girlfriend, who at the time was my girlfriend.  She

16   said, why are you cursing?  I'm embarrassed.  I said, I don't

17   care.  This lady, I continued to yell at her, continued to yell

18   at her husband.  All I did was curse somebody out.  I apologize

19   for that.  If she was here, I wish I could apologize to her

20   face.  She didn't deserve to get yelled at, cursed at,

21   threatened, or anything of that nature.

22             THE COURT:  Were you trying to intimidate her?

23             THE DEFENDANT:  No, I wasn't trying to intimidate her.

24   I think it was more my anger that I have trouble with and I

25   wasn't getting help with at the time.  Now I'm much more calm,

 1  getting treatment, I'm taking medication, so I'm a different

 2  person.

 3          THE COURT:  Did you intend to interfere with her

 4  ability to do her work?

 5          THE DEFENDANT:  Yes, because I think me yelling at

 6  her, cursing her out, calling her fat girl or whatever, she

 7  can't do her work.  She couldn't serve me if she wanted to.

 8          THE COURT:  That was in the Bronx, is that where that

 9  happened?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do either counsel believe any additional

12  facts need to be listed for a satisfactory allocution?

13          MR. COHEN:  No, your Honor.

14          MR. SMITH:  No, your Honor.

15          THE COURT:  Do either of you believe there are any

16  additional questions of any kind I should be asking Mr. Stanley

17  today?

18          MR. COHEN:  No, your Honor.

19          MR. SMITH:  No, your Honor.

20          THE DEFENDANT:  Could I ask you a question?

21          (The defendant and counsel conferred)

22          MR. COHEN:  Thank you, your Honor.

23          THE COURT:  Do either counsel know of any reason why I

24  should not accept this plea?

25          MR. COHEN:  No, your Honor.

1          MR. SMITH:  No, your Honor.

2          THE COURT:  I will note for purposes of the consent

3    form that I have explained to Mr. Stanley the charges against

4    him and the maximum penalty that may be imposed on the charge

5    that he is facing if he were to be found guilty.  I have

6    informed him of his right to an attorney, his right to a trial

7    by jury, and his right to be tried and sentenced before either

8    a district judge or a magistrate judge.  It is my understanding

9    he does wish to proceed before a magistrate judge.  I am

10   accepting that consent.

11         Based on my colloquy with Mr. Stanley, I conclude that

12   he does understand the nature of the charge and that he does

13   understand the consequences of his plea.  It also appears to me

14   that his plea is voluntary; I am satisfied of that.  And I am

15   satisfied there is a factual basis for the plea.

16         I will also note for the record that although Mr.

17   Stanley did seem somewhat lethargic at times during this

18   proceeding, he demonstrated sufficiently to me that he

19   understood the questions being asked and that he was able to

20   participate in the proceedings.

21         There was one point I think where you lost

22   concentration, but you snapped back to concentration pretty

23   quickly.  I do believe you understood what I was asking you and

24   participated appropriately in the proceedings.

25         So, I am not going to reject the plea on competence

 1    grounds.  I believe Mr. Stanley was competent to enter the

 2    plea.  Accordingly, I will accept the proffered plea to the

 3    information in 13 Cr. 443.

 4              We were requested to have a sentencing date that is

 5    fairly soon, as I understand it.

 6              MR. COHEN:  That's correct, your Honor.  With the

 7    government's consent, we are requesting that the Court waive

 8    the pre-sentence report in Mr. Stanley's case.  There is a lot

 9    of information regarding Mr. Stanley's background, both in

10    terms of his upbringing and in terms of the mental health

11    treatment that he was receiving before, mental health treatment

12    that he is receiving now that our office will be able to

13    provide to the Court.  I think it will be far more detailed

14    than anything that the Court will receive from the probation

15    department.

16              We will also provide the Court with all of the details

17    of Mr. Stanley's prior offenses.  I believe that under Rule 32

18    we will be able to satisfy the Court's interest in receiving

19    all of the important information necessary to sentence Mr.

20    Stanley.  Obviously, if after our submission the Court feels

21    that it needs additional information, we will be able to

22    provide it.

23              In addition, there are a couple of other

24    considerations.  One, as I think Mr. Steimel can represent to

25    the Court and I can as well, I don't believe that the interview

 1  between the probation officer and Mr. Stanley in the first

 2  instance, as would happen in a pre-sentence interview, will be

 3  very effective.  It takes a long time to develop a rapport with

 4  Mr. Stanley and to be able to elicit information from him.  So

 5  I don't believe a pre-sentence interview itself will be of much

 6  use.  We can provide all of the required background

 7  information.

 8          The other reason is that, as the Court noted earlier,

 9  Mr. Stanley first appeared before the court on the information

10  last June.  It is now July of 2014.  It has nothing to do with

11  anything that the government or anyone else has done.  There

12  have been lots of reasons for the delay.  But it has been a

13  long time.  I think it is in everyone's interests, both the

14  government and pretrial and Mr. Stanley's, to proceed to

15  sentencing more expeditiously.

16          Our request is to schedule sentencing for August 20th

17  at 10 a.m.  I would provide to the Court our submission well in

18  advance of that.  If the Court needed additional information,

19  we would, of course, between the government and myself, provide

20  it to the Court.

21          THE COURT:  Counsel?

22          MR. SMITH:  Your Honor, the government is consenting

23  to this request because, among other things, we have been

24  provided a great deal of information by defense counsel.  We

25  also are confident that defense counsel in this case has a

 1    great amount of information about Mr. Stanley's background that

 2    they will be able to provide to the Court that the government

 3    has reviewed already.

 4              Of course, the Court will have to look at that

 5    information and make its own decision about whether that is

 6    sufficient.  But having reviewed the information, we are

 7    satisfied that Mr. Cohen has a great deal of information about

 8    Mr. Stanley.  Mr. Steimel also has worked with Mr. Stanley now

 9    for a very long time.

10              As a result of some things that have happened

11    throughout the course of this case, discussions that I have had

12    with defense counsel, and internal processes that my office has

13    had in trying to make a decision about what the appropriate

14    outcome was, we have also learned a great deal about Mr.

15    Stanley.  I don't anticipate any factual disputes about those

16    things.

17              For all of these reasons, we think that waiver of the

18    PSR request is proper and we consent to it.

19              THE COURT:  Mr. Steimel, to the extent you have any

20    information, is there any way to get that information to me in

21    connection with the pre-sentence submissions?

22              MR. STEIMEL:  Your Honor, I will provide any

23    information that you request.  I can provide you with

24    information regarding what I have received from the mental

25    health facilities.  Whatever I have I can provide.  I am still

1  waiting on some information from the facility, the Harlem Bay

2  PROS.  I have to get the information.  I do not have a release

3  form signed yet.  I am waiting to get that, hopefully today.

4  So I can provide you what we have since his release from

5  Lincoln Hospital.

6          THE COURT:  I would just like to make sure that if you

7  are in possession of information that counsel are not and are

8  not otherwise providing to me, that I make sure I get all of

9  the available information that could be relevant to sentencing.

10          MR. STEIMEL:  Yes, your Honor.

11          THE COURT:  I don't mind if you provide it to counsel

12  and counsel provides it, if you provide information directly,

13  however you wish to proceed.  I just want to be sure I have all

14  the relevant pieces of information.

15          MR. STEIMEL:  Whatever information I have, your Honor,

16  I can provide directly to you.  Some information I cannot

17  provide specifically to defense counsel and the government, but

18  I can give you everything that I can accumulate.

19          THE COURT:  That's fine.

20          MR. STEIMEL:  I can give them some reports.  We are

21  not allowed to provide everything to them, but I can provide

22  everything to your Honor.

23          THE COURT:  Just make sure that I understand what you

24  are giving me that is for my eyes only and what has been

25  provided to counsel so that I understand what the distinction

1  is.

2          MR. STEIMEL:  Yes, ma'am.

3          MR. COHEN:  Your Honor, a couple of things.  One is

4  that we would request that whatever pretrial provides to the

5  Court in connection with Mr. Stanley's sentencing, that the

6  Court provide to Mr. Smith and myself so we can all have in

7  front of us whatever issues may be before the Court in terms of

8  making a sentencing determination.

9          THE COURT:  Let me see if there is anything that is

10 material.

11          MR. COHEN:  I did want to follow up for a moment, if I

12 may.  First of all, I should let the Court decide what the

13 Court will agree to.

14          THE COURT:  I will grant the request to forgo the

15 pre-sentence report based on the statements that have been made

16 in court today that I will be receiving the relevant

17 information, a good amount of it, I gather, with respect to Mr.

18 Stanley's past criminal history, treatment history, conduct

19 history, those things that would be relevant to sentencing.  I

20 will make a final decision when I see that information as to

21 whether I think more is needed.  But at this time I will grant

22 the request subject to review upon seeing what I receive.

23          MR. COHEN:  Thank you very much, your Honor.

24          I wanted to follow up.  There was a conversation

25 between the Court and counsel several weeks ago regarding an

1    incident report that was prepared at Lincoln Hospital while Mr.

2    Stanley was a patient there and whether that information could

3    be disclosed to the Court and what it consisted of.  A couple

4    of points that are related.

5           One is I wanted to let the Court know that Mr.

6    Stanley's girlfriend, Nakisha Lynn, and his brother are here

7    today to show their support for Mr. Stanley.  As the Court

8    notes from Mr. Steimel's report, there was an incident with Ms.

9    Lynn in which there was a physical altercation between Mr.

10   Stanley and her.

11          My understanding of the context of that is that, as

12   the Court knows or now knows, Mr. Stanley has a very

13   significant seizure disorder.  One of the side effects of that

14   disorder is that after a seizure he wakes up or comes out of it

15   confused and sometimes aggressive and often doesn't remember

16   what happened during those periods.  That was the case with

17   what happened with Ms. Lynn.

18          Mr. Stanley took it upon himself to notify pretrial

19   about it, took it upon himself, with the help of Mr. Steimel,

20   to check into Lincoln Hospital.  My understanding from Mr.

21   Stanley is that while he was at the hospital, he had another

22   seizure and again woke up confused and perhaps aggressive,

23   although he doesn't remember anything other than the fact that

24   he was restrained.  That led to his continued stay in the

25   hospital for another week.

1          I believe that that is what the substance of this

2     incident report possibly details.  Obviously, from the

3     hospital's perspective, it didn't rise to the level of

4     requiring from their part any additional concerns.

5          I spoke with the lawyer for the hospital, who told me

6     essentially that he can't reveal to me what the incident report

7     says.  Mr. Stanley doesn't have any rights in terms of

8     revealing the report.  It has nothing to do with patient

9     confidentiality.  The report relates to the hospital's internal

10    processes, their quality assurance, perhaps litigation

11    protection in terms of documenting such an incident.

12         Under state law he is not allowed to reveal it to

13    anyone, except he could reveal it to the Court for the Court's

14    own eyes.  He would have to tell the Court that the Court could

15    not, under state law, reveal its contents to anyone else.  But

16    he would feel that once he has done that, he would have no

17    authority, legal or otherwise, to say anything about what the

18    Court did under federal law in its determination of whether the

19    Court could reveal that information to others.

20         I believe, based on Mr. Stanley's recollection, which

21    sounds very logical in terms of his condition and his behavior,

22    that his recollection of the incident is probably a reliable

23    one to the extent of the nature of it, not the specific details

24    of what he may have done during the seizure.

25         I don't believe that, given the hospital's position,

1    there is an additional need to get more information about it.

2    But if the Court felt otherwise, we would consent to the Court

3    requesting the incident report from the hospital.  We would ask

4    that the Court share it with defense counsel and, if

5    appropriate after we looked at it, if appropriate, with the

6    government as well.  Again, we don't think it is necessary, but

7    I wanted to provide that information to the Court so it could

8    decide what it wanted to do.

9         THE COURT:  My recollection is that Mr. Steimel sent

10   me the --

11        MR. COHEN:  Mental health hygiene law statute.

12        THE COURT:  -- the provision in law that the hospital

13   was relying on saying to say that it could provided to the

14   Court for the Court's eyes only and that the Court could not

15   then reveal it to anyone else.

16        I looked at that law.  I didn't seem to put a copy in

17   the file, but I remember looking at it and I remember thinking

18   that there may be a different way to read that and it may be

19   that the Court could in fact order that it be disclosed.  But I

20   didn't pursue it, as things seemed to be moving along a little

21   bit more smoothly thereafter with Mr. Stanley's release and I

22   didn't hear any further reported problems.

23        Mr. Steimel, I know you may have some concerns about

24   what happened in the hospital.  Are your concerns less now?

25        MR. STEIMEL:  Yes, your Honor.  When speaking with the

1   doctors and staff at the hospital, they told me that it did not

2   rise to the level of criminal act where the police were called.

3   Given the fact that the defendant is here before your Honor,

4   that we have now a sentencing date, and he appears to be in

5   compliance and medicated, as long as your Honor is not ordering

6   any action, we are satisfied as of right now.

7        MR. COHEN:  I should also add, your Honor, that one of

8   the outcomes of his hospital stay was that the dosage and

9   delivery method of the medication that Mr. Stanley was

10  receiving for these seizures was changed.  He is in a

11  different, more intensive mental health treatment program where

12  he participates in a number of different group sessions and

13  individual sessions on a very consistent basis as well as other

14  vocational and educational related programs.  He has not had

15  any seizures since his release.

16       THE COURT:  How long ago was the release?

17       MR. COHEN:  I think it was about a month ago.  June

18  16th, your Honor.  Almost exactly four weeks, maybe five weeks

19  now.  Mr. Stanley lives with Ms. Lynn.  I'm sorry.  I have

20  saying "Linna."  It's Lynn, L-Y-N-N.  Lives with Ms. Lynn.

21  From her report, he has been doing very well.

22       THE COURT:  I am not going to move further with that

23  at this time.

24       Mr. Stanley, I will see you again for sentencing.  We

25  have set it down for a date in August.  What was the date?

1                    THE CLERK:  August 20 at 10:00.

2                    THE COURT:  August 20th at 10 o'clock a.m.

3            My understanding from what I have been told by counsel

4    and by Mr. Steimel is that it would appear that you do need

5    medication, that you do much better when you are on your

6    medication, and that you are well served to be in a treatment

7    program and to be compliant with the requirements of that

8    program.

9            I am going to tell you that between now and the time

10   of sentencing, I hope and expect that you will be consistent

11   with your medication, with going to the program and all of

12   that, so we don't run into any problems between now and the

13   time of sentencing.

14           Of course, regardless of what your past history is,

15   going forward into the future between now and the time of

16   sentencing is an important period of time for me to be able to

17   assess how things are going and what an appropriate sentence

18   would be.  If you are not compliant with medication, if you

19   start having any issues in the community or at home, I'm going

20   to end up hearing about that, and it is undoubtedly going to

21   have some kind of impact.

22           So I would urge you on a going-forward basis, between

23   now and sentencing and thereafter, that you listen to doctors

24   and those who have your interests at heart and are trying to

25   help you deal with whatever conditions you have.

1          Anything else for today, counsel?

2          MR. SMITH:  Nothing from the government, your Honor.

3          MR. COHEN:  No, your Honor.  Thank you very much.

4          THE COURT:  Nothing else, Mr. Steimel?

5          MR. STEIMEL:  No, Judge.  Thank you.

6          THE COURT:  Thank you all.  I will see you again in

7   August.

8          (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25